The first case this morning is number 08-5087, Bell BCI Company v. United States. Mr. Simpkin. May it please the Court, and good morning, Your Honors. The government's argument with respect to accordance satisfaction is very straightforward. A contract modification that releases the government from any and all liability attributable to the modification is clear and unambiguous. It means just what it says. That is, any type of liability, such as in this case Bell's claims for labor inefficiency costs, are released assuming they are attributable to the modifications. But what about Bell's argument, and correct me if I'm wrong, seems to be that they couldn't release claims that were not in dispute and they had no reason to even anticipate might occur. I mean, let's assume hypothetically you work for GM and you filed numerous employment suits with respect to promotions and seniority, and you get a settlement with the employer that says you are releasing any and all claims, future, present, and past, with this employer. You get $50,000, that's done, and three months later you get hit by a car on the premises through gross negligence. Does that mean that you can't sue your employer for that because of the release? Well, it depends on the language of the release, Your Honor. Well, if the release says I release any and all claims towards my employer, but that release is executed in the context of your settling all these employment discrimination claims, and then this incident wholly separate, apart, and unanticipated occurs, do you think the release would apply to those future unrelated incidents? Well, it would depend, and Bell correctly argues that a requirement of court of satisfaction is that the claim be in negotiation or in dispute or even capable of being negotiated. Where Bell errs is that they claim the labor inefficiency claims were not subject to negotiation in modifications 93 through 140. The point, the critical point is that the claims being negotiated in these modifications were change claims under the Changes Clause. And as the trial court correctly recognized, since 1967 the Changes Clause has provided an equitable adjustment for precisely the type of inefficiency claims that Bell presents. Am I correct that even after the delays began, the same release language appears in Mods 93 through 141 when they're in the midst of the problem, so they must be aware of it? Correct. They were aware of it during that time and even beforehand. But then what do we do past that, where they reserve the right to sue on many occasions? Don't they deserve having reserved the right? Don't they deserve to exercise their right for all those times that they didn't waive it? Well, yes, Your Honor, but it was their burden, of course, to prove their claim, and they had the opportunity to segregate out the impacts that were caused by changes that contained a reservation of rights. Bell did not do that. But that's kind of a separate issue. The issue is to whether there's an accord and satisfaction that disappears when they expunge that from the contract in many of the Mods past 141, doesn't it? Yes, it does. An accord and satisfaction argument is not based upon post-Modification 140 claims. As a practical matter, Your Honor, however, the vast bulk, if not the entire bulk, of unearned labor hours occurred during that critical period from August 2000 through... But even if we agreed with you, wouldn't we send it back to see what impact these unaffected claims had on the delay? I would not say that's required. Again, the court could, in its discretion, remand for that type of analysis. Let me see if I understand where you're getting to with Judge Rader's question. If there's cumulative impact for work being assessed here outside of Modules 93 through 140, so you would agree they would be entitled to that? Well, they would be entitled to prove it at trial, but they made no attempt to segregate those costs. Forget what they attempted to do. Do we know, does the government agree that some of the money includes cumulative impact costs beyond the Modules 93 through 140? I'm sorry, if you could repeat that question. Is all of the cumulative impact for any work not covered by Modules 93 through 140? In theory, yes, because Bell attempted to prove its claim under a modified total cost basis. They simply looked at everything in total, and presumably that total would include changes that occurred after Modification 140. No, no, please continue. So if we were to conclude that you are right as a matter of law with respect to the release, our decision in that regard would only cover work, cumulative work under those modules that included that release. Am I right about that? And as Judge Rader suggested, it would have to go back, and somebody would have to calculate what that is and isn't. Well, it could go back. I think the court in its discretion could remand for that type of analysis. Alternatively, the court could hold that Bell had the opportunity to prove his claim. It failed to segregate out costs that were released from those that were not, and therefore failed in its proof. So that would be our primary position, but of course as an alternative, a remand could occur. But I don't think even Bell wants that, because as its own expert testified, there are almost no unearned labor hours after that critical period. Well, fortunate for us, I think we'll all be about to find out. But this is really not quite your position. The trial, as I understood it, was again what you've just told us, that there is no segregation, and there was no attempt or argument by the government to require or to propose such a segregation. Wasn't your position that because of the language in the modification, that there is an accord of satisfaction for every claim, perhaps not a gross negligence or a tort claim or something unrelated to the contract? But there's no issue here that these claims are unrelated to the performance of the contract. So having taken that position, that there is an accord of satisfaction of every claim related to the contract, aren't you stuck with that? I'm not drawing upon the distinction between that argument and the segregation argument. As opposed to taking it apart step by step, hour by hour, and seeing whether or not it was or was not directly affected by the preconceived accord that, never mind, it doesn't matter what happens in the future, we're not going to sue you. Which is the government's position, is it not? Well, to the extent the claims are based upon changes or cost increases that are attributable to those set of modifications. Again, I believe the government made the segregation argument in its post-trial briefing, but that was... There was no evidence, and there was a lot of evidence, a lot of expert evidence, concerning the sources of these additional costs. Well, there was expert testimony generally on a total basis. I mean, the costs are not disputed. It's not disputed that they were incurred. Correct, Your Honor. We don't dispute that calculation of costs, no. I'd like to look at something in the record, and I'm going to ask you, Mr. Wolf, to do the same thing. Look at page 1209 of the record, and it's only an example of one instance of this. We have... It's one of the mods. This is mod 124. And it has the Accord and Satisfaction language. And underneath it, in handwritten form, you'll see... And this language, the Accord and Satisfaction, does not affect the contractor's right for damages due to delays. And then that's struck out, and there's a statement that that's void. Now, that suggests to me that there was issues about this going on throughout the period 93 through 141. Am I right? What is going on here? And by the way, why wasn't it in either brief? I had to discover this on my own, or my clerks did. Well, there was... To my knowledge, there was not trial testimony on that particular modification or that handwriting. Well, that's pretty relevant to whether or not they can... The meaning of the Accord, isn't it? If at least at one time they tried to expunge it, and then took it back. So there's debates going on about this throughout the 93 through 141 period, right? Well, we address that issue not specifically to this modification, but more generally. We showed in our brief that just prior to modification 93, the parties were executing bilateral modifications that did, in fact, contain a statement. By the way, this exact same thing happens in Mod 110, 111, 127, 130, 133, 135. This is not an isolated incident. What's going on here? I'll try to explain, Your Honor. Again, just prior to Mod 93, the parties were executing a number of bilateral modifications that did contain statements reserving Bell's right to present a delay and disruption claim. Modification 81 is one such example of that type of language. That's contained at page 1135 of the Joint Appendix. Beginning with Modification 93, that language dropped out, and the release language began to appear. At some point in time in the following year, in the spring of the following year, as the work started to encounter problems and the positions of the parties started to differ, Bell did attempt to begin to start reserving its rights. In fact, in July of 2001, Mr. Barden, Bell's project manager, wrote to NIH and explained to NIH that the time had come that Bell was required to start reserving its rights and would intend to incorporate language reserving disruption claims just like it did in Modification 81. In fact, beginning with Modification 42, Bell started to do that. Now, in these few modifications earlier in the spring, Bell attempted to do that. My understanding, again there's no trial testaments, I'm a little reluctant to speak on it, but my understanding is that Mr. Barden attempted to put that language in. The contracting officer or some official from the government said, No, remember that this EWO, that is the basis of this modification, was paid for in full by Modification 93, therefore you can't reserve anything. Now, is this in the record what you're telling us, or I appreciate you responding to Judge Rader's question. No, as I said, my understanding is I did not see any discussion on this particular issue of the language that's written in there and then crossed out. So it was, my understanding is that it was Bell's attempt to begin to reserve its rights, but the government pointed them back to Modification 93, and therefore Bell acknowledged by crossing it out. It says statement void by Bell. Bell, and I believe that is Mr. Barden's signature there. So that indicates Mr. Bell, Barden's recognition that Bell was not able to reserve its rights with respect to those EWOs, extra work orders, but once there were a sufficient number of new EWOs that were covered by the previous accord, Bell could begin to again reserve its rights, and you see that beginning in Modification 142. We're well into your rebuttal, Judge Rader. Let's hear from the other side. Yes, thank you, Your Honor. Mr. Willett. Thank you, Your Honor. May it please the Court. Judge Rader, I'll pick up on your question that you had asked counsel. Yeah, but this seems to cut pretty hard against you. It looks like you did make an attempt to reserve your rights and then withdrew it. Thus, you did contemplate it. You were aware of the implications of your accord and satisfaction, but you did not reserve your rights. No, Your Honor. Am I right? I would suggest no, Your Honor, and for the following reason. In the record also is a summary of all the EWOs that were issued by time. I believe this is found at 1563 of the appendix, and in there it's broken out by various time periods, and there's a notation there about the EWOs that were fully reserved, et cetera. I apologize to the Court. I'm racking my brain to recall if Mr. Barden testified about this or not. Regardless, if you look at this particular EWO 415, it is one that was in existence prior to August 31, 2000. Modification 93 says that the time impacts, et cetera, for all changes issued prior to August 31, 2000 are settled up in that mod. What this reflects, we contend, is simply that it was an error on our part about the time impact of this particular change because, as we have acknowledged, we gave up the right for time extensions based on those changes that were submitted to us prior to August 31, 2000. As the record further reflects, Bell, in what I guess we could perhaps have been calling this sort of interim period after Mod 93, was aware and quite concerned about the time impacts it was suffering. There's a great deal of testimony about that, including the fact that the government and its contracting officer issued changes and said do this without any time extension and or struck from Bell's time extension requests. What the record further shows, however, that specifically with regard to the cumulative impact claim, Bell was not aware and we submit could not be aware of the cumulative impact until sometime after it began reserving its rights. But that just seems to say that you were aware, that you were trying to reserve and you were making efforts to account for that delay. My response, Your Honor, again, though, is that the record shows during this period, this was signed in February of 2001, that there was this period of time following Mod 93's execution. Well, we'd have to go back and check if that applies to the other seven or eight where this occurs. Yes, Your Honor. I believe what you will find, however, that in those instances as well, that those Before August 2000. Yes, Your Honor, and that it was simply limited to the time impact of those changes. Perhaps precisely to the point, what do we do with the contract which says on its face that you have surrendered any and all, it can't be much broader than that, any and all claims? Your Honor, with due respect, I believe the release is not quite that broad. Help me out. It looks pretty broad to me. Certainly, Your Honor. First of all, liability under the contract attributable to the modification. The evidence due to trial showed that that phrase meant the direct cost for that modification. Indeed, as in so many of the accord and satisfaction cases cited by the government, a contractor who signs a change order would then go back and try to seek additional overhead, things of that nature. That is not our claim. Again, the record on this is But you didn't specify that. You didn't say that the claims we're talking about here are additional overhead claims. You say any and all claims for an equitable adjustment attributable to the modification. Correct, Your Honor. And that appears all the way up through 141. Correct, Your Honor. My point, though, is that the phrase attributable to the modification, as the evidence showed, simply meant for direct cost attributable to that change. Let me just see. When you say the evidence, as I recall from the briefs, the evidence you cite for that is Mr. Barton's testimony. Correct, Your Honor. And that's the only evidence you're referring to. That is correct, Your Honor. Again, the attributable to the mod we submit on the record is undisputed in that regard. But the courts awarded additional damages, delay damages, for delays arising from that modification. Why isn't that in flat conflict with the language of the court in satisfaction? Because, Your Honor, the delay claims upon which the court awarded Bell were, again, those that were subject to reservations, full reservations. The place in the appendix that I referred the court to a moment ago that has the summary points out, I believe, that over the entire life of the project, I believe 53 percent of the EWOs issued had a full reservation. And in the mod 93 period, I believe it's 89 percent likewise had a full reservation. And, again, I think it's relevant here that the evidence of what was going on in this time period establishes conclusively that what was known was time, not the impact. And the accordance satisfaction case law, I believe, is quite clear. And I think Mr. Simpkin acknowledged that in order for there to be an accordance satisfaction, to satisfy that element of a meeting of the minds, the issue must be in dispute, negotiated in some fashion. The silence will not be inferred as releasing that right. And I believe that's where the government errs here. They are seeking to make essentially every release into a broad release of claims known, unknown, disputed, undisputed. And the language of the mod simply will not bear that. We think that it's quite clear that the modifications are limited for the changes therein, the stated purpose. I thought the trial court's analysis regarding the schedule updates from which the delays were caused includes the EWOs that were waived. No, I believe that's not correct, Your Honor. That we can check pretty quick. Certainly we can, Your Honor. Regardless, I think the court goes on to say there are various EWOs that impacted the various time periods within there. And likewise, our expert, Mr. Brannon, made the same point. His analysis lists a host of EWOs that have the effect on any given point in time and on any of the specific milestone dates, the 14 milestone dates that were established by Mod 93. I believe the trial court's finding that there was this overwhelming evidence of delay is correct. There was a tidal wave, one that we believe we incurred. And so there are a number of fallbacks, if you will, Your Honor, that excusable delay was achieved on many fronts, on all fronts. Now, with regard to that, I think that's where the government's liquidated damage claim also fails, sort of the flip side of our delay claim, if you will. And that is where the record shows that our expert, in fact, analyzed each one of the individual critical paths for these 14 milestone dates. The government's expert did not. And we were able to show a cause and effect of each one of the delays. There was an analysis. What about the deficient, the lack of evidence with respect to the EWOs? I mean, the government's main critique of that is, as I understood it, that the court of claims didn't do any particular specific analysis with respect to numerous of the individual EWOs. I would respectfully disagree, Your Honor. In the court's opinion, I believe the court did focus principally on maybe a half a dozen or thereabout EWOs, which the contracting officer had approved. And then the government's contract manager rescinded the approval of payment of those. Likewise, however, I think the court made its findings that the work at issue in those EWOs was shown to be extra work, and that Bell's costs that it claimed for those were reasonable. I believe that's our burden, and I believe the court was correct in that regard. Admittedly, the court did not go through, at least in its opinion, in enumerating each one. But I think in summary form it did that, and then it broke it out for a number of those examples. Was there evidence in the record with respect to each individual EWO? There was, Your Honor, in the sense that each one of them was identified. The process by which each one of them was created was identified. We focused on, forgive me, Your Honor, I don't know the exact number, but in the interest of time, we certainly focused on some, but not all. But the testimony in the record is that they were each prepared the same way. There was an analysis that these, in fact, constituted extra work. There was an analysis that the costs for these had been tracked, and that those costs were reasonable. So part of what you're asking for here is a set amount with respect to the EWOs that's separate and apart from, even if we find against you on the accorded satisfaction of Paragraph 8? Or is there all... Yes, Your Honor. I mean, I think there's these, to the side, are these group of EWOs. I think there were 58 of them, if memory serves, for which there's admittedly no modification, no anything. They exist to the side. Okay. So the cumulative award consists of, excuse the use of that word. I don't like that word, but it consists of different pieces. Some is part of it with respect to whatever we decide on the accord and satisfaction release, and part of it is on the EWOs. I think that's correct, Your Honor, yes. If I may go back to the accord and satisfaction. Did you also not forget to respond to Judge Rader on my question about modifications 93 through 140 and whether some of the money dealt with is outside of the cumulative impact money, is outside of those modifications? You know, the point we pressed with the government. I understand, Your Honor. Our view is that our claim for cumulative impact embraces all the changes because it was not released by the terms of the modifications, number one. So we would argue that, yes, because those modifications did not address, did not negotiate, did not otherwise bring up to the front cumulative impact claims, that they do not serve as a bar to our claim. Our fallback, if you will, is we have identified the specific EWOs for which we have a full reservation of rights. I think at trial the government did proceed on sort of an all or nothing basis. We submit that is incorrect. Again, our initial point is that we have the right to assume for all of them because they were not released. A worst case scenario from our point of view is that certainly for those for which there is a full reservation, we have the right to proceed with it. I think here also the court's finding that the major impact to the labor hours post dated mod 93 dovetails in with the fact that's the period also when we began to have our full reservation of rights. As I mentioned, I believe it's 89% of the EWOs during that period. So I think we have preserved that in its totality and certainly in its vast majority. Now, with regard to the government's arguments about the methodology for our cumulative impact, I would simply submit that our expert did a measured mile. It was appropriate. It was verified. Likewise, the government's arguments with respect to the damages awarded to subcontractor, I think the court was reasonable in that fashion as well. The evidence supported the claim. It was demonstrated. And that evidence for that subcontractor Stromberg came in without objection by the government at trial. In short, we asked the court to affirm in its totality the court of claims opinion. If there are no further questions, I thank the court. Is your question answered as well as any more questions for Mr. Wolfe? Thank you, Mr. Wolfe. Thank you, Your Honor. I think we have a little time. A few seconds remaining, so I'll try to be very brief. Just quickly on the court and satisfaction argument, Mr. Wolfe mentioned that the phrase attributable to the modification in effect meant direct costs or something related to direct costs, in effect reading that term in there. We would submit that it's clear on his face. It doesn't include that qualification. And in fact, again, touching back to modification. But it includes the qualification attributed to the modification. So what are we talking about that? Isn't that a limiting phrase? Right, most definitely. But it's not further limited to only direct costs or excluding direct costs. And as I was just mentioning, in Modification 81, which was signed in the same month that Modification 93 was negotiated, that modification at Appendix Page 1136 contains the type of language that one would expect to see to distinguish between direct and indirect costs in terms of reserving and releasing rights. Was this resolved, debated before the trial judge? I'm sorry, Your Honor? This distinction between the direct and indirect costs or expected or unexpected consequences or whatever additional distinctions might be drawn were explained to the trial judge as well? Well, the government's position didn't draw those kind of distinctions. It was simply that any and all liability meant just what it said. But that was my impression, that it was all or nothing, and I wanted to be sure I understood that. Yes. Yes, Your Honor. Quickly, on the matter of the 58 disputed changes, Mr. Wolfe, in his brief, cited the pages of testimony that Bell contends provided the support for all of those changes, and we would simply submit, Your Honor, that a review of that testimony does nothing of the sort. It's either a passing reference to a particular EWO as being disputed, and the most significant piece of evidence was just Mr. Barton's summary testimony based upon a summary listing of all 58 EWOs and his opinion that all of those items of work were outside the contract and performed by Bell. Thank you. Any more questions for Mr. Simpkin? Thank you, Mr. Simpkin. Thank you. Thank you.